(No. 52558.—

RICHARD DUBIN *et al.*, Appellees, v. MICHAEL REESE HOSPITAL AND MEDICAL CENTER, Appellant.

*Opinion filed December 1, 1980.—Rehearing denied January 29, 1981.*

Lord, Bissell & Brook (William P. Dorr, Harold L. Jacobson and Hugh C. Griffin, of counsel), and McKenna, Storer, Rowe, White & Farrug (John F. White, Robert S. Soderstrom and James P. DeNardo, of counsel), all of Chicago, for appellant.

Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago (Nat P. Ozmon, Mark Novak and Dario A. Garibaldi, of counsel), for appellees.

Harry L. Kinser and Kenneth C. Robbins, of McLaughlin, Kinser & Bryant, of Chicago, for *amici curiae* Illinois Hospital Association and Chicago Hospital Council.

James Fletcher, of Winston & Strawn, of Chicago, for *amicus curiae* Illinois State Medical Society.

Paul G. Gebhard and Douglas J. Polk, of Vedder, Price, Kaufman & Kammholz, of Chicago, for *amicus curiae* American College of Radiology.

MR. JUSTICE MORAN delivered the opinion of the court:

Plaintiffs, Richard Dubin, Carla Gifford and Joan Debra Kurlan, filed separate complaints in the circuit court of Cook County against defendant, Michael Reese Hospital and Medical Center, seeking compensation for personal injuries received as a result of X-radiation administered by defendant. The complaints contained two counts: one count based on negligence, the other based on strict liability in tort. The trial court dismissed the counts founded on strict liability and granted summary judgment in favor of defendant on the negligence counts. Each plaintiff appeals only the court's dismissal of the strict liability count. The three appeals were consolidated for review. The appellate court reversed and remanded the causes, finding that the plaintiff's count in each case did state a cause of action under the doctrine of strict liability. (74 Ill. App. 3d 932.) We granted defendant's petition for leave to appeal.

The sole issue is whether X-radiation is a product as that term is utilized in a strict products liability action. Defendant argues that the doctrine of strict products liability is inapplicable to X-radiation since it is not a product. Instead it characterizes X-radiation as the rendition of professional medical services under which strict products liability does not apply.

The three plaintiffs received X-radiation treatment

from the defendant hospital for tonsillitis: Dubin in 1947, Gifford and Kurlan in 1951. Dubin filed his complaint on August 13, 1976, Gifford filed her complaint on April 19, 1976, and Kurlan filed her complaint on January 5, 1978, each alleging that they had developed malignant tumors as a result of the X-radiation. The counts charging strict liability in tort claim that defendant prepared, manufactured, distributed, supplied and/or sold certain X-radiation and caused it to enter their bodies. Plaintiffs further allege that such X-radiation was in a condition not reasonably safe for its intended purpose when it left the control of defendant in that defendant failed to warn of its carcinogenic effects. Each plaintiff claims that he or she developed a malignancy as a result of excessive and prolonged exposure to X-radiation.

Generally, a seller of a product will be held strictly liable for physical harm sustained by a consumer as a result of a defective condition which renders the product unreasonably dangerous. (Restatement (Second) of Torts sec. 402A (1965).) X-radiation is not "unreasonably dangerous" *per se*. It is routinely used by physicians and dentists for the early detection of a variety of diseases and as an aid in the treatment of such diseases. Used in this manner, X-radiation is not dangerous and does not produce adverse effects. Moreover, the plaintiffs here did not claim that X-radiation used under such circumstances is unreasonably dangerous or has a carcinogenic effect. Rather, they claim it was the application of X-radiation in their case that caused it to be unreasonably dangerous. Plaintiffs' argument does not center on any inherent defect in the X-radiation itself, but on the inappropriateness of the application of certain amounts of X-radiation to treat plaintiffs' conditions. The claimed "danger" is actually the professional medical decision as to when X-radiation may be safely utilized to combat a disease, the manner in which

it is to be administered, and the amount of X-radiation to be applied. These three determinations are based upon the professional skills of the party directing the treatment. In this instance, plaintiffs are claiming that an overdose was administered, thereby causing the injuries received. Since plaintiffs' complaints are directed toward the amount of X-radiation that was administered, we conclude that the true object of their concern is the alleged error in professional judgment and not, as they claim, the nature of X-radiation itself. Such errors of professional judgment are held to the standard of reasonable skill under the concept of negligence. Strict liability does not come into play in determining the negligence of professional conduct.

Plaintiffs rely on *Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, to support their contention that X-radiation should be subject to the standard of strict liability. In *Cunningham*, this court held that the defendant hospital would be strictly liable for injuries to patients who had received blood contaminated with serum hepatitus. We believe that the distinction between that case and the present case is that in *Cunningham* the blood was unreasonably dangerous in itself. The contaminants were part of the blood at the time of its manufacture and delivery. It was not the medical decision to perform a blood transfusion that created the danger, but the defective nature of the product itself which was unreasonably dangerous. In the present case, the opposite is true. X-radiation presented no danger as it contained no inherent defect. Rather, the dangerous condition was brought about by the medical decision to use certain amounts of X-radiation in treatment of plaintiffs' disease. Consequently, we find *Cunningham* to be inapposite here.

We, therefore, find that the appellate court erred in finding X-radiation to be a product subject to the doctrine of strict liability in tort. For the reasons stated, the judg-

ment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*